**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JASON R. KREJCI, Individually and on behalf of others similarly situated, | ) ) ) ) | |
| PLAINTIFF, | ) ) | Civil Action No. |
| v. | ) ) | Jury Demanded |
| LAW OFFICES OF IRA T. NEVEL, LLC, | ) ) ) | |
| DEFENDANT. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff, Jason R. Krejci, brings this action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and alleges as follows:

## JURISDICTION AND VENUE

1.       This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) of the FDCPA, and 28 U.S.C. § 1331.

2.       Venue is proper in this District because Defendant transacts substantial business here.

## PARTIES

3.       Plaintiff, Jason R. Krejci ("Plaintiff") is a resident of the State of Illinois, from whom Defendant attempted to collect a delinquent consumer debt allegedly owed for a defaulted mortgage loan incurred for the purchase of his home and personal residence, located at 417 Bristol Way, Cary, Illinois, 60013, and thus the loan was incurred for personal, family and household purposes.

4.      Plaintiff is a consumer as that term is defined in 15 U.S.C. § 1692a(3) of the FDCPA.

5.      Defendant, Law Offices of Ira T. Nevel, LLC ("Defendant") is an Illinois LLC that acts as a debt collector, as defined by § 1692a(6) of the FDCPA, because it regularly uses litigation, the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts on behalf of others.

6.      Defendant maintains a website, www.nevellaw.com that reads in part as follows:

**Creditors' Rights**

**At the Law Offices of Ira T. Nevel, LLC, we represent banks, mortgage lenders and other creditors, handling a broad spectrum of creditors' rights issues, including:**

- **Mortgage foreclosures**
- **Creditors' rights**
- **Bankruptcy**
- **REO closings**
- **Evictions**
- **Housing Violations**
- **Administrative Hearings**
- **Title and title clearance**
- **Real Estate Tax Deed Defense**
- **HOA Defense**

**We provide efficient, effective representation to clients throughout the Greater Chicago area and the State of Illinois. Our clients are often up against strict timelines. We understand that your bottom line depends on their attorney's ability to represent them effectively and expeditiously from cradle to grave.**

**We have long represented clients who service loans insured by FHA, VA, Federal National Mortgage Association and Federal Home Loan Mortgage Corporation. We are fully compliant with the OCC and the Consumer Financial Protection Bureau (CFPB).**

7.      Defendant's website states that it maintains an office in Chicago, Illinois.

8.      In 2018, Defendant has filed more than 100 residential foreclosure complaints against consumers in Illinois who have defaulted on their home mortgages.

9.      Defendant has identified itself as a "debt collector" in its written communications to Plaintiff.

## STANDING

10.     Plaintiff has standing because he has suffered an injury-in-fact as the result of Defendant's actions. Specifically, Defendant has misrepresented the amount of the alleged debt by stating late charges are due and owing, which is enough to establish Article III standing despite the fact that he never paid the illegal amounts sought. See, e.g., *Keele v. Wexler*, 149 F.3d 589, 593-594 (7th Cir. 1998).

11.     Because Defendant's misrepresentations and omissions, stated below, deprived Plaintiff of accurate material information that posed a risk of real harm, they satisfy the concrete-harm requirement. See, e.g., *Lane v. Bayview Loan Servicing*, LLC, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258, at *14-16 (N.D. Ill. July 11, 2016).

## FACTUAL ALLEGATIONS

12.     Plaintiff incurred a consumer debt alleged to be owed for a mortgage loan ("Loan") taken out in connection with the purchase of his home and personal residence, located at 417 Bristol Way, Cary, Illinois, 60013, and thus the loan was incurred for personal, family and household purposes ("alleged debt"), and the loan obligation is thus a "debt" as that term is defined at § 1692a(5) of the FDCPA.

13.     Freedom Mortgage Corporation purports to be the creditor to which the alleged debt is owed.

14.     The alleged debt was asserted to be in default by Freedom Mortgage Corporation after Plaintiff missed making payments toward the alleged debt.

15.     Freedom Mortgage Corporation thereafter hired Defendant to collect the alleged debt, after default.

16.     On or about November 8, 2017, Defendant mailed Plaintiff a letter ("Letter") indicating *inter alia* that Plaintiff owes $219.642.24 to Freedom Mortgage Corporation. (Exhibit A, Letter).

17.     The Letter is the initial communication between Defendant and Plaintiff made by Defendant, in connection with the collection of the alleged debt.

18.     The Letter was sent in connection with the collection of the alleged debt, and is a "communication" as that term is understood and defined in the FDCPA.

19.     The amount of $219,642.24 sought from Plaintiff in the Letter represented an acceleration of all amounts due from Plaintiff with respect to the subject loan, as of November 8, 2017.

20.     The Letter reads each read in part as follows:

> **As of 11/08/2017, you owe FREEDOM MORTGAGE CORPORATION $219,642.24. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater…**(Exhibit A, Letter)

21.     The Letter does not purport to provide a reinstatement balance.

22.     At no time did Plaintiff seek reinstatement of the note and mortgage at issue, nor did he reinstate the note and mortgage at issue.

23.     Defendant's threat of late charges in the Letter is false, as late charges cannot be imposed where the loan has been accelerated and no reinstatement is in effect. (See, i.e., *Rodriguez v. Codilis & Assocs.*, P.C., No. 17-cv-03656, 2018 U.S.

Dist. LEXIS 54898, at *11 (N.D. Ill. Mar. 30, 2018) ("As Rodriguez points out, BSI cannot impose late charges for failure to make monthly payments after a loan has been accelerated. See, e.g., *Rizzo v. Pierce & Associates*, 351 F.3d 791, 793 n.1 (7th Cir. 2003)).

24.     If Plaintiff did not reinstate his mortgage following acceleration, the late fees could not be charged. See *Wells Fargo Bank Minn. N.A. v. Guarnieri*, 308 B.R. 122, 128 (D. Conn. 2004) ("However, once the loan is accelerated, as was the case here, there are no further monthly payments due and the lender is therefore not required to incur administrative expense in handling late payments."); *Jackson v. Carrington Mortg. Servs*., No. 17-60516-CIV, 2017 U.S. Dist. LEXIS 191932, at *9 (S.D. Fla. Nov. 16, 2017).

25.     Defendant's threat of late charges is false, confusing, deceptive and unfair, and the threat of a higher balance due to late charges could influence an unsophisticated consumer's decision to pay the alleged debt.

26.     The Letter also contains a "Notice of Debt" as that term is understood under the FDCPA, section 1692g. (Exhibit A, Letter).

27.     The Notice of Debt provides as follows:

> **You have thirty days from the day you receive this notice to dispute any portion of the debt. If you do not dispute the debt within this thirty-day period, we will assume that the debt is valid. If you notify this office in writing during the 30-day period that you dispute any portion of the debt, this office will obtain written verification of the debt and will mail that written verification to you.**
>
> **Further, you may send this office a written request for the name and address of the original lender, if that lender is different from the current creditor.**
>
> (Exhibit A, Letter).

28.     The Notice of Debt does not inform Plaintiff that Defendant, as a debt collector, must suspend its efforts to collect the debt, including via litigation, if Plaintiff communicates a written dispute to Defendant within thirty days of his (the consumer's) receipt of the Letter containing the Notice.

29.     The Notice of Debt does not inform Plaintiff that the law does not require Defendant to wait until the end of the thirty-day period before suing to collect the debt or commencing any foreclosure action.

30.     The Notice of Debt does not provide a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

31.     The Letter indicates that Defendant is a debt collector.

32.     The Letter indicates that Defendant is attempting to collect a debt.

33.     After mailing the Letter, on or about November 17, 2017, Defendant filed a complaint to foreclose the mortgage in the Circuit Court of the 22nd Judicial Circuit, County of McHenry, State of Illinois, titled *Freedom Mortgage Corporation v. Jason R. Krejci, A/K/A Jason Robert Krejci et al*, Case No. 17CH000826 ("State Action Complaint"). (Exhibit B, State Action Complaint).

34.     The State Action Complaint attached within Exhibit B is a true and accurate copy of the complaint filed in the State Action.

35.     The State Action Complaint sought a personal judgment for a deficiency from Plaintiff.

36.     On November 29, 2017, Defendant caused the State Action Complaint and Summons to be served on Plaintiff. (Exhibit C, Summons and Return of Service).

37.     Defendant thus both filed and served the State Action Complaint, upon Plaintiff, within thirty days of the date upon which Plaintiff received the Notice of Debt from Defendant.

38.     The Letter does not state or explain whether Defendant could continue to attempt to collect the alleged debt if he timely disputed the alleged debt in writing within thirty days of receipt of the Letter, but after the foreclosure action had been filed.

39.     The Letter does not inform Plaintiff that if he disputes the alleged debt in writing within thirty days of receipt of the Notice of Debt contained in the Letter, Defendant will suspend its efforts to collect the alleged debt, *including via litigation*, until Defendant mails verification of the alleged debt to Plaintiff.

40.     At the time the State Action Complaint and Summons was served on Plaintiff, Plaintiff was not aware that Defendant was required to cease collection of the alleged debt, including via litigation, until Defendant mailed verification of the alleged debt to Plaintiff.

41.     Plaintiff was not aware that Defendant was required to cease collection of the alleged debt including via litigation, until Defendant mailed verification of the alleged debt to Plaintiff, because Defendant did not inform Plaintiff of this fact at any time.

42.     Defendant's act of serving the State Action Complaint and Summons on Plaintiff, that indicates on its face that an appearance is required within thirty days of service, without explaining in its Notice of Debt (or in any other communication) that

Defendant was required to suspend its efforts (including by litigation) to collect the alleged debt if a written dispute is made by Plaintiff within thirty days of receipt of the Notice of Debt, would rob the unsophisticated consumer of material information to which the consumer was entitled, and that could influence a consumer's decision to pay the alleged debt.

43.     Defendant's collection communications and activities are to be interpreted under the "unsophisticated consumer" standard.  See *Gammon v. GC Services, Ltd.* Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994).

44.     Defendant sought and threatened to sell Plaintiff's home through a judicial sale in an attempt to collect the defaulted home loan that comprises the alleged debt.

45.     Defendant's communications with Plaintiff, including via mail and via the act of filing and maintaining a foreclosure action that was served upon each Plaintiff, constitute debt collection. See *Bieber v. J. Peterman Legal Grp. Ltd*., 104 F. Supp. 3d 972, 2015 U.S. Dist. LEXIS 63754, 2015 WL 2340354, at *2-4 (E.D. Wis. May 15, 2015) (foreclosure action that does not seek money judgment is debt collection under FDCPA); *Kabir v. Freedman Anselmo Lindberg LLC*, No. 14 C 1131, 2015 U.S. Dist. LEXIS 104299, at *10-11 (N.D. Ill. Aug. 10, 2015) (same); *Shahnaaz A.R. Khan v. OneWest Bank, F.S.B.*, No. 16 CV 8074, 2017 U.S. Dist. LEXIS 55691, at *22 (N.D. Ill. Apr. 12, 2017)(stating "Here, Azeem alleges that defendants threatened to sell her home through a judicial sale in an attempt to collect Azeem's defaulted home loan. This sufficiently alleges that defendants acted in collecting on a debt under the FDCPA."); *Paulsen v. Peterman*, No. 14-cv-106-wmc, 2015 U.S. Dist. LEXIS 41429 (W.D. Wis.

Mar. 31, 2015) (finding that initiation of foreclosure proceedings absent deficiency claim was an attempt to collect debt within scope of FDCPA's protection).

## COUNT I—CLASS CLAIM—IMPERMISSIBLE THREAT OF LATE CHARGES

46.     Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

47.     At the time the Letter was mailed, the Loan had been accelerated.

48.     At the time the Letter was mailed, reinstatement had not been sought by Plaintiff, and the Loan and mortgage was not in reinstatement.

49.     Defendant cannot legally impose late charges for failure to make monthly payments after the loan has been accelerated, and reinstatement had not been sought, as in this case. *Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003) (citing sixteen cases for the proposition that "a lender cannot demand payment of late fees for failure to make monthly payments after the loan has been accelerated").

50.     While a note may provide for a lender to collect late charges when an installment is not received by a due date, those installments are no longer "due" after the lender has accelerated the note and made demand upon the borrower.

51.     Defendant's threat that late fees will be imposed is deceptive, false and misleading, as late fees cannot be imposed in a case like this where the loan has been accelerated and no reinstatement has been sought.

52.     Section 1692e of the FDCPA provides as follows:

**§ 1692e.  False or misleading misrepresentations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

> …
> **(2) The false representation of—**
> **(A) the character, amount, or legal status of any debt; or**
> **(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.**
> …
> **(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**
> …
> **(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

53.     Defendant violated §§ 1692e, e(2)(A), e(2)(B), e(5) and e(10) of the FDCPA when it made false, deceptive, and/or misleading representations in the connection with the collection of a debt.

54.     Defendant violated § 1692e and e(2)(A) of the FDCPA when it made false, deceptive, or misleading representations in communications mailed to Plaintiff as to the amount of debt owed by Plaintiff, as the amount due could not legally include late fees, and the threat to impose said fees was false.

55.     Defendant violated § 1692e(5) of the FDCPA by threatening to impose late fees when late fees could not legally be imposed, and/or when it did not intend to impose late fees as the debt was accelerated and Plaintiff had not sought reinstatement.

56.     Defendant violated § 1692e(10) of the FDCPA by falsely and deceptively threatening to impose late fees in order to induce Plaintiff to pay a debt, when in fact such late fees were not legal, and could not be sought.

57.     An unsophisticated consumer would believe, upon receiving the Letter mailed to Plaintiff, that late fees could be sought and imposed when, in fact, it would not be legal to do so.

58.     Section 1692f of the FDCPA provides as follows:

> **A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
> **(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

59.     Defendant violated 1692f and f(1) by attempting to collect amounts from Plaintiff that were not authorized by the agreement creating the debt or permitted by law, namely "late charges".

60.     The letter contained in Exhibit A is a form letter.

61.     The Letter attached within Exhibit A, which threatens the imposition of late charges i) after a defaulted loan has been accelerated and ii) where reinstatement has not been sought, violates the FDCPA: while a note may provide for a lender to collect late charges when an installment is not received by a due date, those installments are no longer "due" after the lender has accelerated the note and made demand upon the borrower where the borrower had not sought reinstatement.

62.     Plaintiff brings this action as a class action. The class consists of (a) all individuals (b) with addresses in Illinois, (c) to whom Defendant  mailed a letter in the form of those contained in the attached Exhibit A, stating that "Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater", (d) where the amount sought in the letter reflects an acceleration of the indebtedness, e) where the borrower had not sought reinstatement of the loan, and f) where the letter was mailed on or after June 2, 2017 and on or before June 16, 2018.

63.     The members of the class are so numerous that joinder of all is not practicable.

64.     Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

65.     The Class consists of more than 40 persons from whom Defendant attempted to collect delinquent consumer debts, by mailing the type of letter that was mailed to Plaintiffs.

66.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, and a risk that any adjudications with respect to individual members of the Class would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests. Defendant has acted in a manner applicable to the Class as a whole such that declaratory relief is warranted.

67.     Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Defendant's conduct was perpetrated on all members of the Class and will be established by common proof.

68. Plaintiff has retained counsel experienced in class action litigation brought under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class defined above, and against Defendant, for:

(1) Statutory damages;

(2) Attorney's fees, litigation expenses and costs of suit;

(3) Such other and further relief as the Court deems proper.

## COUNT II—CLASS CLAIM—OVERSHADOWING AND VIOLATION OF SECTION 1692g(a)(5)

69. Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs.

70. 15 U.S.C. § 1692g of the FDCPA provides in part as follows:

**(a) Notice of debt; contents**
**Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**
**(1) the amount of the debt;**
**(2) the name of the creditor to whom the debt is owed;**
**(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**
**(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**
**(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**

**(b) Disputed debts**

**If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

71.     The Letter contained in Exhibit A is a form letter.

72.     Defendant's Letter contained a "Notice of Debt" as that term is defined in section 1692 of the FDCPA. (Exhibit A, Letter).

73.     Defendant's Notice of Debt, mailed to Plaintiff on or about November 8, 2017 and received by Plaintiff on or about November 17, 2017, communicated *inter alia* that he had thirty days from the date of receipt of the Notice to dispute the alleged debt in writing in order to obtain verification of the alleged debt. (Exhibit A, Letter).

74.     Thirty days from November 17, 2017 is December 17, 2017.

75.     The Notice of Debt states "Your mortgage loan has been referred to our office to file a foreclosure complaint". (Exhibit A, Letter).

76.     On November 29, 2017, Plaintiff was served with a copy of the Summons and Complaint that was filed in the State Action. (Exhibit C, Summons to Plaintiff).

77.     The Summons states in part as follows:

**YOU ARE SUMMONED and required to file an Answer in this case, or otherwise file your Appearance in the office of the Clerk of this Court (located in the McHenry County Courthouse, 2200 NORTH SEMINARY, WOODSTOCK, ILLINOIS, 60098), within 30 days of service of this Summons, not counting the day of service.**

78.     Plaintiff was thus required to file an answer or otherwise appear in the State Action on or by December 29, 2017.

79.     Plaintiff thus had until December 17, 2017 to dispute the alleged debt in writing with Defendant in order to obtain verification of the alleged debt under section 1692g, and until December 29, 2017 to file an answer and/or appearance.

80.     Defendant did not communicate or explain to Plaintiff in the Letter or the Complaint or Summons filed in the State Action, how the deadline to dispute and the deadline to answer and/or appear, fit together.

81.     For example, Defendant did not communicate or explain to Plaintiff that, if Plaintiff disputed the alleged debt in writing within thirty days of receipt of the Notice of Debt, that Defendant would be required to suspend collection of the alleged debt, including by litigation, until Defendant mailed Plaintiff verification of the alleged debt.

82.     Defendant's failure to inform Plaintiff that Defendant was required to suspend litigation until it mailed verification of the alleged debt to each Plaintiff robbed Plaintiff of material information to which he was entitled to under the FDCPA, thereby damaging and injuring Plaintiff.

83.     Plaintiff was confused by Defendant's failure to explain how the deadline for disputing the alleged debt for the purpose of obtaining verification meshes with the deadline for filing an answer and appearance to the complaint.

84. An unsophisticated consumer would be confused by Defendant's failure to explain how the deadline for disputing the alleged debt for the purpose of obtaining verification meshes with the deadline for filing an answer and appearance to the complaint.

85. Plaintiff did not know, and an unsophisticated consumer would not know, that a debt collector, such as Defendant here, would be required to cease collection of the alleged debt, including via any pending litigation, if he or a consumer communicated a written dispute to the debt collector within thirty days of the consumer's receipt of a Notice of Debt.

86. Plaintiff would be left to wonder how the deadline to file an appearance and answer would fit with his right to dispute the alleged debt and obtain verification of the alleged debt.

87. The 7th Circuit has recognized the potential for confusion when a debt collector, such as Defendant here, causes overshadowing of a consumer's right to dispute a debt and obtain verification of the same. *Bartlett v. Heibl*, 128 F.3d 497, 502 (7th Cir. 1997).

88. Indeed, in Bartlett, the 7th Circuit crafted a "safe harbor" letter for use by debt collectors that wish to avoid violating the FDCPA, which reads in part as follows:

> **The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.** *Id*. (emphasis added)

89.     Defendant intentionally omitted the safe harbor language provided in
*Bartlett* which explained that if Plaintiff requests proof of the debt (in writing) within
the thirty day period that began with his receipt of the Notice of Debt, Defendant was
required to suspend its efforts, through litigation or otherwise, to collect the debt until it
mailed verification to Plaintiffs. *Id.*

90.     Defendant's act of serving the State Action lawsuit within the thirty-day
period that began with Plaintiff's receipt of the Notice of Debt, where neither the
Notice of Debt nor any other communication to Plaintiffs explained that Defendant was
required to cease litigation upon receipt of a timely-served written dispute,
overshadowed the disclosure of Plaintiffs' rights to dispute the alleged debt under
section 1692g(b) of the FDCPA, in violation of that section.

91.     Defendant violated section 1692g of the FDCPA by causing
overshadowing of a consumer's right to dispute a debt and obtain verification of the
same.

92.     Defendant also violated sections 1692e and 1692f of the FDCPA by
unfairly and deceptively misleading Plaintiff via not informing him of his rights, under
the FDCPA, to have Defendant cease collection of the alleged debt until it mailed
verification of the alleged debt to Plaintiff.

93.     The Notice of Debt contained in the Letter also states as follows:

> **Further, you may send this office a written request for the name and
> address of the original lender, if that lender is different from the
> current creditor.**

94.     The language in Defendant's Letter violates section 1692g(a)(5), as the
statement does not comply with the requirements of that section, which mandate that a

debt collector provide a "statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." 15 U.S.C. §1692g(a)(5).

95.    The language in Defendant's Letter violates section 1692g(a)(5) because it does not inform Plaintiff that a written request for the name and address of the original lender must be made by him within the thirty-day period that begins with the Plaintiff's receipt of the Notice of Debt.

96.    The language in Defendant's Letter violates section 1692g(a)(5) because it does not inform Plaintiff that Defendant is *required* to provide Plaintiff the name and address of the original creditor, if different from the current creditor if a timely written request is made for the same. The language used by Defendant merely states that Plaintiff may *request* the information, without indicating that Defendant must respond to the request by law if such a request were timely made, in writing.

97.    An unsophisticated consumer could lose his or her rights to obtain information to which he or she is entitled if the consumer requests the name and address of the original creditor more than thirty days after the consumer received a Notice of Debt, as Defendant did not inform Plaintiff that such a request was required to be made within that time, though the statute requires it.

98.    An unsophisticated consumer would not know that the debt collector was required to provide the name and address of the original creditor, if different from the current creditor, to continue collecting the alleged debt, as Defendant merely states that a "request" may be made for such information—without any further statement stating

the deadline by which such a request must be made, or any statement communicating

that, by law, the debt collector must suspend its efforts to collect a debt until the debt

collector mails the information to the consumer, if a written request is timely made by a

consumer.

99.     The Notice of Debt does not provide a statement that, upon the

consumer's written request within the thirty-day period, the debt collector will provide

the consumer with the name and address of the original creditor, if different from the

current creditor, and thus it violates section 1692g.

100.    Plaintiff brings this action as a class action. The class consists of (a) all

individuals (b) with addresses in Illinois, (c) to whom Defendant mailed a letter that

contains a Notice of Debt in the form contained in the attached Exhibit A, d) that does

not indicate or otherwise communicate that Defendant was required to suspend its

collection efforts (including litigation) if the individual disputes the debt in writing to

Defendant within thirty days of the individual's receipt of the Notice of Debt, e) where

Defendant thereafter filed and caused a residential foreclosure action to be served

within thirty days of the date upon which the individual received the Notice of Debt, f)

where the Notice of Debt also reads that "…you may send this office a written request

for the name and address of the original lender, if that lender is different from the

current creditor", and g) where the letter was mailed on or after June 2, 2017 and on or

before June 16, 2018.

101.    The members of the class are so numerous that joinder of all is not

practicable.

102. Plaintiff's claims are typical of the claims of the Class. Common questions of law or fact raised by this class action complaint affect all members of the Class and predominate over any individual issues. Common relief is therefore sought on behalf of all members of the Class. This class action is superior to other available methods for the fair and efficient adjudication of this controversy.

103. The Class consists of more than 40 persons from whom Defendant attempted to collect delinquent consumer debts, by mailing the type of letter that was mailed to Plaintiffs and by serving a residential foreclosure action on the same.

104. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, and a risk that any adjudications with respect to individual members of the Class would, as a practical matter, either be dispositive of the interests of other members of the Class not party to the adjudication, or substantially impair or impede their ability to protect their interests. Defendant has acted in a manner applicable to the Class as a whole such that declaratory relief is warranted.

105. Plaintiff will fairly and adequately protect and represent the interests of the Class. The management of the class action proposed is not extraordinarily difficult, and the factual and legal issues raised by this class action complaint will not require extended contact with the members of the Class, because Defendant's conduct was perpetrated on all members of the Class and will be established by common proof.

106. Plaintiff has retained counsel experienced in class action litigation brought under the FDCPA.

107.    Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard.  *See Gammon v. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class defined above, and against Defendant, for:

(1)  Statutory damages;

(2)  Attorney's fees, litigation expenses and costs of suit;

(3)  Such other and further relief as the Court deems proper.

## JURY DEMAND

Plaintiff demands trial by jury.

The Law Office of M. Kris Kasalo, Ltd.          By: s/ Mario Kris Kasalo
20 North Clark Street, Suite 3100               Mario Kris Kasalo
Chicago, Illinois 60602
tel 312.726.6160
fax 312.698.5054
mario.kasalo@kasalolaw.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

By: s/ Mario Kris Kasalo
Mario Kris Kasalo